IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMIE REED, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:22-cv-04095-MDH |
| CASCADE FUNDING MORTGAGE TRUST ) | |
| HB7, ET AL., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are Defendants Cascade Funding Mortgage Trust HB7 and PHH Mortgage Corporation's ("Defendants") motion for summary judgment (Doc. 59). For reasons herein, Defendants' motion for summary judgment is **GRANTED**. Summary judgment is entered in favor of Defendants.

## BACKGROUND

This case involves allegations of unfair practices pursuant to the Missouri Merchandising Practices Act relating to an Adjustable Home Equity Conversion Deed of Trust ("Reverse Mortgage") entered by decedents Mardue and John Reed ("Borrowers"). Plaintiffs complain the mortgage servicer failed to help secure financing to payoff the Reverse Mortgage. Further, Plaintiffs complain the mortgage servicer failed to provide for a challenge mechanism to appraisals of the underlying collateral. Plaintiff Jamie Reed ("Ms. Reed"), a Missouri resident, is the personal representative of the estate of John H. Reed and an heir at law of the estate. Plaintiff Jospeh Reed, a Missouri resident, is an heir at law of the estate (collectively "Plaintiffs"). They bring this action against Defendant Cascade Funding Mortgage Trust – HB7 ("Cascade"), a Delaware statutory

trust, who currently holds the Reverse Mortgage and Defendant PHH Mortgage Corporation ("PHH"), a New Jersey corporation, who was the servicer of the Reverse Mortgage at the time of the alleged unfair practices.

On December 29, 2010, Borrowers executed and delivered a Deed of Trust on their home at 100 Terra Estates Drive, Sunrise Beach, MO ("Property") to Wells Fargo Bank to secure the Reverse Mortgage. Borrowers agreed "to repay to Lender amounts which Lender is obligated to advance, including advances, under the terms of [the Reverse Mortgage]." (Doc. 60, Exhibit A, Page 3) Borrowers were entitled to borrow a maximum principal limit of $938,250 of which they drew $430,969.50. The initial interest rate was 2.461 percent, to be adjusted monthly. Upon certain conditions, the Reverse Mortgage becomes due and payable. Once due and payable the "Lender shall not have the right to commence foreclosure until thirty (30) days after notice to either (i) correct the matter which resulted in the [Reverse Mortgage] coming due and payable; (ii) pay the balance in full; (iii) sell the [P]roperty for the lesser of the balance or 95 percent of the appraised value and apply the net proceeds of the sale toward the balance [("Heir Payoff")] ; or (iv) provide the Lender with a deed in lieu of foreclosure." (Doc. 60, Exhibit A, Page 6).

Upon John Reed's death in July 2018, following the death of Mardue Reed, the Reverse Mortgage became due and payable. As of August 2, 2018 the outstanding balance was $577,576.26. Ms. Reed, as personal representative of the estate, received notice in August of 2018 that she was required to decide whether to (i) pay the $577,576.26 balance in full, (ii) effectuate an Heir Payoff, (iii) tender a deed in lieu of foreclosure or (iv) allow foreclosure. When an Heir Payoff option is selected, an appraisal has to be conducted and renewed every 120 days. In December 2018, the Property was appraised at $400,000. Plaintiffs discussed keeping the Property, and as early as late 2019 Ms. Reed began trying to obtain financing to purchase the Property. In

April 2021, nearly three years after the death of John Reed, Plaintiff Jamie Reed first expressed her intent to purchase the Property.

In May 2021, the Property was appraised again. This time at a value of $375,000, allowing for a $356,250 Heir Payoff. On August 31, 2021 Reverse Mortgage Solutions, Inc ("RMS"), the mortgage servicer, acknowledged Ms. Reed's intent to purchase the Property and again sent notice of its right to foreclose upon Plaintiffs failure to purchase. On September 16, 2021 RMS sent an Heir Payoff offer to Ms. Reed. The offer expired on October 13, 2021 and stated the outstanding loan balance was $688,275.69. The offer letter explicitly stated, "If the appraisal has expired a new appraisal will need to be ordered and the *value of the subject property could increase."* (Doc. 60, Exhibit T, Page 1) (emphasis added). On October 1, 2021 PHH assumed service of the Reverse Mortgage. Ms. Reed thereafter attempted to contact RMS and PHH to have them contact her lender to facilitate financing of the offer. However, neither RMS nor PHH contacted Ms. Reed's lender. There is no indication in the record what information was to be provided to the lender. Ms. Reed was still being processed for the loan and it is unclear if Ms. Reed would have been approved even if additional information was provided. Ms. Reed did not tender the Heir Payoff amount. On October 28, 2021 Cascade became the holder of the Reverse Mortgage from Wells Fargo Bank.

In December 2021 the Property appraised at $750,000, allowing for a $712,500 Heir Payoff. Ms. Reed did not exercise an Heir Payoff. In March 2022, a fourth appraisal valued the Property at $600,000, allowing for a $570,000 Heir Payoff. Ms. Reed again did not exercise an Heir Payoff. PHH took the position it would grant no further extensions and scheduled the Property for foreclosure in May 2022. The state court enjoined the foreclosure action pending resolution of this case.

**STANDARD OF REVIEW**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**ANALYSIS**

**I.     Plaintiffs' Claim that PHH Delayed an Approved Heir Payoff and Ensured Plaintiffs Had no Time to Secure a Loan**

Ms. Reed alleges that she contacted RMS and PHH after October 1, 2021, to have such companies contact her lender to facilitate a loan to effectuate the $356,250 Heir Payoff. However, neither RMS nor PHH made any attempt to contact Ms. Reed's lender. Ms. Reed did not tender the payoff. A new appraisal of the Property was required under the terms of the mortgage, as explained in the default letter of September 16, because more than 120 days had elapsed since the prior appriasal. The resulting appraised value of the Property substantially increased the future Heir Payoff amount. More than three years passed, from her parents' death to the expiration of the

first Heir Payoff offer on October 13, 2021, during which Plaintiff failed to exercise her right under the Reverse Mortgage.[1]

The Court finds that Ms. Reed has failed to set forth specific facts showing there is a genuine issue for trial. Nowhere in the Reverse Mortgage does it impose an obligation on the lender nor the mortgage servicer to help facilitate financing for an Heir Payoff. No other legal doctrine imposes such a duty. Ms. Reed was responsible for getting the funds necessary to purchase the Property and was afforded years to complete the purchase. It is unclear that PHH contact with Ms. Reed's lender would have resulted in an approved loan. There is no evidence Plaintiffs ever tendered $356,250 to Defendants at any time, let alone prior to October 13, 2021. It is uncontroverted that Ms. Reed had three years to exercise her right to an Heir Payoff and failed to exercise it. There was no obligation for Defendants to accept the $356,250 purchase price after the first Heir Payoff offer expired even if Plaintiffs had been in a position to tender it. The September 16, 2021 offer letter explicitly stated "If the appraisal has expired a new appraisal will need to be ordered and the *value of the subject property could increase.*" (Emphasis added). Under the terms of the mortgage a new appraisal was required. Here, the Property value based on appraisal went up. The Property's value could have dropped as it did between the third and fourth appraisals. Plaintiffs were not legally entitled to the Heir Payoff amount based on an outdated appraisal.

## II. Plaintiffs' Claim that PHH Did Not Allow Contests to Appraisal Values

Ms. Reed claims she attempted to contest the value of the December 2021 and March 2022 appraisals, but PHH took no steps to allow her to contest such amounts and refused to allow her to dispute such value. Defendants ask for summary judgment arguing that the Reverse Mortgage

---

[1] The payoff expired October 13, 2021. Cascade did not obtain ownership of the Reverse Mortgage until October 28, 2021. PHH only began serving the Reverse Mortgage on October 1, 2021.

provided no recourse to appeal the Property's value. There is no record of any written request by Ms. Reed to appeal the appraised value of the Property before the commencement of the lawsuit.

The Court finds that Plaintiffs have failed to set forth specific facts showing there is a genuine issue for trial. From December 2018 to March 2022 four different appraisals were taken of the Property. Nowhere in the record did Ms. Reed seek to challenge any of the qualifications of the appraisers nor seek to submit any alternative appraisals. Nothing in the record indicates Plaintiffs attempted to contest appraisal values until after the start of legal proceedings. Further, the Reverse Mortgage did not grant Borrowers, or Ms. Reed as the personal representative of the estate, a right to appeal or contest an appraisal that would have allowed Ms. Reed to do so. Plaintiffs recourse in contesting the appraisals and enforcing rights as heir would be in its pending state foreclosure action.

Defendants have demonstrated the absence of a genuine issue of material fact regarding appraisal rights. Defendants' motion for summary judgment as to this claim is granted.

**III.    Plaintiffs' Claim of Vicarious Liability Against Cascade**

Plaintiffs claim that PHH acted on behalf of Cascade and is therefore Cascade is vicariously liable for PHH's unfair practices. Plaintiffs allege that Cascade is responsible for PHH's failure to contact Ms. Reed's lender to secure financing for the first Heir Payoff. Additionally, Plaintiffs argue that Cascade is responsible for PHH not allowing Ms. Reed to contest the December 2021 or March 2022 appraisal values. Cascade became the owner of the Reverse Mortgage on October 28, 2021, 28 days after PHH assumed service of the Reverse Mortgage. This was after the deadline in the September 16 letter expired. The record is unclear as to the terms of Cascade's acquisition of the mortgage from Wells Fargo Bank and what, if any, of Wells Fargo liabilities regarding the

mortgage Cascade may have assumed. However, to the extent the claims are all based on vicarious liability for action of its loan servicer PHH, and the Court has found for PHH on its motion for summary judgment, Cascade too is granted judgment on Plaintiffs' claims against it.

As summary judgment has been entered for Defendants on the underlying claims for which vicarious liability is argued, the Court need not look further into the parties' claims. Defendants have demonstrated the absence of a genuine issue of material fact. Plaintiffs has failed to set forth specific facts showing a genuine issue for trial and thus Defendants' motion for summary judgment as to this claim is granted.

## CONCLUSION

For foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. Summary judgment is entered in favor of Defendants.

**IT IS SO ORDERED**.
DATED: September 11, 2024

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**